United States District Court
Southern District of Texas
FILED

JUN 0 9 2004

Michael N. Milby
Clerk of Court

## UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANSELMO PALOMARES-PENA | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Case No. B-04-59 |
| | § | |
| GRACE A. WINFREY, Interim Field | § | |
| | § | DHS A No. 91 241 238 |
| Office Director for Detention and | § | |
| Removal, Bureau of Immigration and | § | |
| Customs Enforcement, Department of | § | |
| Homeland Security, ARON | § | |
| CABRERA, Interim Deputy Field Office | § | |
| Director, Port Isabel Service Processing | § | |
| Center, and TOM RIDGE, Secretary | § | |
| Department of Homeland Security | § | |
| Respondents | § | |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTIVE RELIEF

Petitioner Mr. Palomares-Pena, through his undersigned attorney, submits this Memorandum of Law in support of his Motion for Preliminary Injunctive Relief.

Mr. Palomares-Pena filed a petition for writ of habeas corpus to challenge his detention by Respondents. He seeks preliminary injunctive relief because his continued detention irreparably harms his constitutionally-protected liberty rights. Petitioner incorporates by reference the allegations and recitation of facts in his Petition for Writ of Habeas Corpus and Motion for Preliminary Injunctive Relief.

Preliminary injunctive relief is justified when: (1) a plaintiff has a substantial likelihood of success on merits; (2) a substantial threat exists that plaintiff will suffer irreparable injury if an injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm that the injunction will cause defendant; and (4) granting of the injunction will not disserve the public interest. Harris County, Tex. v. Carmax Auto

Superstores, Inc., 177 F.3d 306, 312 (5th Cir. 1999). Because granting an injunction depends largely on the likelihood that a petitioner can succeed on the merits, this brief focuses solely on that issue.

## FACTS

Petitioner left the United States for a brief visit to Mexico. Upon his return to the United States, he presented himself for inspection to immigration authorities at a Pharr, Texas, international bridge. Agents of the Department of Homeland Security (DHS) reviewed Petitioner's claim to lawful permanent resident (LPR) status and refused him permission to enter the United States. The DHS's decision not to grant admission to Petitioner was based on his 1996 Texas conviction which the DHS considered grounds for inadmissibility. 8 U.S.C. § 1182(a)(2). Consequently, Respondents classified Petitioner as an applicant for admission (also referred to as an "arriving alien"), see 8 U.S.C. § 1101(a)(13)(C), and detained him for an immigration proceeding to determine his inadmissibility. 8 U.S.C. § 1225(b)(2).

Subsequently, Petitioner and the DHS appeared at a hearing before an Immigration Judge for a determination of Petitioner's inadmissibility. The Immigration Judge, at the conclusion of the final master calendar hearing, determined that the Petitioner was inadmissible and ordered removal. The Immigration Judge had no jurisdiction to consider bond at any time.

Thereafter, Petitioner appealed. Several months later, the Board of Immigration Appeals (BIA) issued its decision on the release order and reversed the Immigration Judge. The BIA upheld the Immigration Judge's decision. Petitioner remains behind bars.

2

## SUMMARY OF THE ARGUMENT

This case concerns the detention of a lawful permanent resident (LPR) by the Department of Homeland Security for a prolonged period of time and without any opportunity for an independent review of the DHS' decision to detain the LPR.

The current statutory and regulatory framework provides for the prolonged and indefinite detention of applicants for admission. Section 1225(b)(2) of the Immigration and Nationality Act (INA) requires the detention of all arriving aliens, including LPRs. 8 C.F.R. § 1235.6(c). Arriving aliens can be released only in certain limited circumstances and only at the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 1212.5(a). In all other instances, arriving aliens must remain incarcerated, regardless of their lawful immigration status, any mistakes an immigration officer makes in classifying non-citizens as applicants for admission, or the length of detention. As conceived, the regulatory scheme for arriving aliens denies LPRs the right to an individualized hearing to determine whether they have been properly classified as an applicant for admission or whether they are a flight risk or a danger to the community.

As a lawful permanent resident, Petitioner is protected by the Due Process Clause. Zadvydas v. Davis, 121 S.Ct. 2491, 2499 (2001); Reno v. Flores, 113 S.Ct. 1439, 1449 (1993). He has a constitutionally-protected liberty interest in freedom from government detention, Zadvydas v. Davis, 121 S.Ct. at 2498, and a right to procedural due process, Landon v. Plasencia, 459 U.S. 21, 32-33, 103 S.Ct. 321, 329-330 (1982); Kwong Hai Chew v. Colding, 344 U.S. 590, 596-97, 73 S.Ct. 472, 477-78 (1953). His detention at the port-of-entry does not diminish his due process rights as a lawful permanent resident. Landon v. Plasencia, 459 U.S. at 33, 103 S.Ct. at 329; Kwong Hai Chew v. Colding, 344 U.S. 590, 596, 73 S.Ct. at 477; 8 U.S.C. § 1001(a)(20); 8 C.F.R. §

3

1001.1(q). And while the detention of LPRs pending immigration proceedings may be justified under certain limited circumstances, <u>Demore v. Kim</u>, 123 S.Ct. 1708 (2003) (upholding statutory provision providing for mandatory detention of non-citizens charged as removable based on certain criminal grounds), such detention must be brief and serve a purported immigration purpose, and the non-citizen must be afforded an opportunity to challenge his designation as one subject to detention. <u>Id.</u> at 1713, 1717-1721; <u>Id.</u> at 1722 (Kennedy, J., concurring)("due process requires individualized procedures to ensure there is at least some merit to the Immigration and Naturalization Service's (INS) charge and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing" and to ensure that the detention does not become unreasonable or unjustified).

Respondents cannot continue to detain Petitioner unless they can demonstrate special and narrow, non-punitive circumstances warranting continued detention. <u>Zadvydas v. Davis</u>, 121 S.Ct. at 2499. No such justification exists in Petitioner's case. Moreover, his detention has lasted for an inordinate and unreasonable amount of time. The Supreme Court has authorized the detention of LPRs pending removal proceedings where the duration of detention is relatively brief. <u>Demore v. Kim</u>, 123 S.Ct. at 1720-1721 (concluding that detention of LPRs pending removal proceedings was lawful largely because the detention period was brief, an average time of 47 days and a median of 30 days). Petitioner has been incarcerated for more than 5 months since an Immigration Judge found that Petitioner was not inadmissible and more than 8 months since Respondent Winfrey first detained him. Such prolonged detention is unlawful.

Petitioner's detention also violates his procedural due process rights. The current regulatory regime providing for the mandatory detention of arriving aliens is woefully

4

inadequate and constitutionally defective as applied to LPRs. As conceived by Congress and understood by the BIA, there is no procedure that permits LPRs to challenge their inclusion in the mandatory detention category as applicants for admissions. This is in marked contrast to the regulatory detention scheme the Supreme Court upheld for LPRs charged as removable on certain criminal grounds. Id. at 1712 nn. 2-3; Id. at 1722 (Kennedy, J., concurring).

Application of the factors identified in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976), for determining the constitutional sufficiency of administrative procedures compels a finding that the detention procedures at issue in this case are constitutionally inadequate. The Government's interest in detention pales in comparison to the substantial private interest at stake—freedom from detention—and the high risk of erroneous deprivation of the private interest. Requiring individualized bond hearings for LPRs classified as arriving aliens will impose minimal administrative and fiscal burdens on the Government. Such hearings are routinely offered to non-citizens not subject to mandatory detention. 8 C.F.R. § 1236.1. Accordingly, the current detention procedures for LPRs who are deemed applicants for admissions are constitutionally defective.

There is no justification for Respondent's decision to detain him. His detention can last several more years because federal courts considering the underlying portion of his case has no deadlines for consideration of the case or determination of the issues. There is no better time for the Court to consider the merits of Mr. Palomares-Pena's request for release.

5

## ARGUMENT

**I.    Petitioner's Detention Violates His Substantive Due Process Rights**

*A. The Terms of This Detention Violate Those Rights*

Petitioner has a protected liberty interest to be free from government detention. His continued and prolonged detention violates Petitioner's rights, especially where there is no justification warranting detention.   Consequently, this Court should find that Respondents are violating Petitioner's constitutional rights and order his release.

Freedom from government detention "lies at the heart of the liberty [the Due Process Clause] protects.   Zadvydas v. Davis, 121 S.Ct. at 2498 (citing Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780 (1992)).   Due process prohibits the government from infringing "certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."   Reno v. Flores, 507 U.S. 292, 301-302, 113 S.Ct. 1439, 1447 (1993)(emphasis in original).   Thus, the Government cannot deprive persons of their liberty unless there are legitimate and compelling reasons justifying the detention.   United States v. Salerno, 481 U.S. 739, 749, 107 S.Ct. 2095 (1987).

Non-citizens present in the United States enjoy the full protections of the constitutional right to due process.   Zadvydas v. Davis, 121 S.Ct. at 2500-2501.   And while the detention of non-citizens in the immigration context presents additional issues not present in the criminal context, the fundamental interest of non-citizens to be free from government detention is no different.   Id. at 2498-2502 (concluding that a non-citizen ordered removed but indefinitely detained had a sufficiently strong liberty interest to raise a question as to the constitutionality of his detention).   The detention of a non-citizen pending deportation proceedings will be upheld only where the detention is brief,

6

serves a purported immigration purpose, and where the non-citizen is afforded an opportunity to challenge the decision that he is properly included in a mandatory detention category. Id. at 1713, 1717-1721; Id. at 1722 (Kennedy, J., concurring)("due process requires individualized procedures to ensure there is at least some merit to the INS' charge and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing" and to ensure that the detention does not become unreasonable or unjustified).

Under this standard, Petitioner's detention is unconstitutional because it has become unreasonably long. His detention has now lasted more than 7 months since he was first detained and more than 5 months since he was ordered removed. Petitioner's detention far exceeds the average time of 47 days the Government claims it takes to complete deportation proceedings in cases where non-citizens are mandatorily detained. Id. at 1721. In addition, Petitioner's removal cannot be said to be reasonably foreseeable because of the likelihood of abatement while the Salazar-Regino v Trominski,  (before the 5th Circuit as Case No. 03-41492), final decision pends.

Finally, unlike the regulatory scheme at issue in Demore v. Kim, the statute and the regulations concerning the detention of applicants for admissions do not afford LPRs, like Petitioner, an opportunity to show that they are not properly included in the category of non-citizens subject to mandatory detention. In Demore v. Kim, the Supreme Court's decision to uphold the mandatory detention of LPRs pending removal proceedings hinged, to a great extent, on the existence of procedural protections which allow LPRs "to demonstrate that [they] are not properly included in a mandatory detention category." Id. at 1712 n.3; id. at 1722 (Kennedy, J., concurring)("due process requires individualized procedures to ensure there is at least some merit to the

7

Immigration and Naturalization Service's charge, and therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing").  In the case of LPRs detained under 8 U.S.C. § 1226(c), federal regulations and BIA precedent afford non-citizens an opportunity to have a <u>Joseph</u> hearing.  8 C.F.R. § 3.19(h)(2)(ii); <u>In re Joseph</u>, 22 I&N Dec. 799 (1999).   "At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." <u>Demore v. Kim</u>, 123 S.Ct. at 1712 n.3.  No such procedural safeguards are afforded to LPRs who are classified as applicants for admissions.

The fact that Petitioner was stopped at the border rather than inside the United States is not determinative of the constitutional protection afforded to Petitioner.  Almost 50 years ago, the Supreme Court recognized that non-citizens granted lawful admission who are stopped at the border must be treated differently than foreigners who have never been admitted to the United States.  <u>Kwong Hai Chew v. Colding</u>, 344 U.S. at 596, 73 S.Ct. at 477.  In <u>Chew</u>, the Court stated, "[f]or purposes of his constitutional right to due process, we assimilate petitioner's [LPR] status to that of an alien continuously residing and physically present in the United States." <u>Id.</u>  This legal principle was reaffirmed by a unanimous Supreme Court in <u>Landon v. Plasencia</u>, 459 U.S. at 32-33, 103 S.Ct. at 329.

### B. The Terms of the Underlying Removal Charges Violate Due Process

A  violation of the constitutional protection to substantive due process exists when a provision, or a combination of provisions, such as exists in this case, operate together to create an unjustifiable conclusive presumption  which is so broad that it does not meet a compelling state interest. *United States v. Salerno*, 481 U.S. 739, 747 (1987).

8

In the instant case, the 1996 law changes brought by the Antiterrorism and Effective Death Penalty Act of 1996 (herein AEDPA), the Illegal Immigration Reform and Immigrant Responsibility Act (herein IIRIRA), which redefined 8 U.S.C. Sec. 1101(a)(48)(A) regarding "conviction" and 8 U.S.C. 1229 B(a) which denied discretionary relief to anyone with an aggravated felony with the statutory and court established overly broad and variable definitions of the term. This created an unconstitutional presumption that all lawful permanent residents who have such a court adjudication should be barred from the United States, even when the state criminal system has determined that it is appropriate for a first time offender with a single criminal plea to receive deferred adjudication.

In addition, the expansive definition of the aggravated felony definition, Sec. 101(a)(43) of the Act, 8 U.S.C. Sec. 1101(a)(43), as adopted by IIRIRA §321, violates due process. In the instant case, sexual abuse of a minor was added to the list of aggravated felonies by IIRIRA as of September 30, 1996. There is no explanation by Congress in the statute or in its legislative history for why this new Section should be applied retroactively. Further, the consequences of applying the statute retroactively are severe. USA v. Ubaldo-Figueroa, 364 F 3d 1042 (9th Cir. 2003). The Petitioner is denied "finality and repose" of the legal consequences of his past conduct. Id at 1055 (Pregerson, J, concurring) As of June, 1996, the offense was a crime involving moral turpitude which was a waivable offense, by the AEDPA defined Sec. 212(c). Since the Fifth Circuit Court of Appeals does not appear to have ruled on this specific retroactivity issue, this Honorable Court may consider the reasoning and holding of another circuit court.

## II.    Petitioner's Detention Violates his Procedural Due Process Rights

9

Respondents have unlawfully deprived Petitioner of a fundamental liberty interest without appropriate procedurals safeguards. Petitioner is being detained without the opportunity to a hearing to challenge an immigration officer's determination that Petitioner is properly included in the category of non-citizens who are subject to mandatory detention. The denial of such basic procedural protections violates Petitioner's due process rights.

A fundamental principle of constitutional law is that the Government cannot deprive persons of their property or liberty interests without notice and some sort of hearing. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985)(citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 323, 70 S.Ct. 652 (1950)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976)(quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965)). The sufficiency of administrative procedures varies with the circumstances and entails a careful and delicate balancing of the private and governmental interests at stake. Landon v. Plasencia, 459 U.S. at 34, 103 S.Ct. at 330. "In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." Id. (citing Mathews v. Eldridge, 424 U.S. at 334-335, 96 S.Ct. at 902-903).

In this case, Petitioner's interests are substantial. At stake is his right to be free from government detention and to rejoin his immediate family. The Supreme Court has accorded great weight to these interests. Zadvydas v. Davis, 121 S.Ct. at 2498

10

(emphasizing the special constitutional protection afforded to freedom from governmental restraint); Landon v. Plasencia, 459 U.S. at 34, 103 S.Ct. at 330 (stressing that a person's right to be with his or her family "ranks high among the interests of the individual"). The nature of liberty interests illustrates why they are weighty. Unlike property interests, liberty interests are intangible. Once lost, they can never be recovered, and no amount of money can fully compensate for the loss of freedom. Admittedly, the Government has an important interest in the enforcement of its immigration laws and in exercising its power over immigration matters generally. Landon v. Plasencia, 459 U.S. at 34, 103 S.Ct. at 330.

The current procedures, however, fail to meet the constitutional standard of fairness. At the outset, it bears mentioning that this case does not present any issues relating to national security or other special circumstances. In making detention the rule rather than exception, the regulations give no weight to the fundamental liberty interests of LPRs. Instead, LPRs and individuals who have no right of admission are treated equally. Thus, the regulations fail to recognize the special constitutional protections accorded to persons lawfully admitted to the United States. Landon v. Plasencia, 459 U.S. at 34, 103 S.Ct. at 330.

It also cannot be said that the Government's interests are advanced by any measurable degree through the indiscriminate detention of LPRs. The Government's interests appear especially weak in this case where an impartial arbiter determined that Petitioner was not inadmissible and thus should be admitted to the United States. Subsequently, a different impartial arbiter concluded that Petitioner was not a flight risk or a danger to the community. Thus, the Government's justifications for detaining Petitioner are without any persuasive force.

Mathews also instructs courts to consider "the fairness and reliability of the

11

existing [ ] procedures, and the probable value, if any, of additional procedural safeguards. <u>Mathews v. Eldridge</u>, 424 U.S. at 343, 96 S.Ct. at 907. Immigration officers at a port-of-entry make decisions whether to admit non-citizens based on limited knowledge and in a matter of minutes. By and large, the facts supporting the decision to admit or deny entry to persons seeking to enter the United States are based on statements made by the non-citizen and on a brief review of information contained in certain computer databases.

Whether a particular state or federal offense meets the definition of 8 U.S.C. § 1184(a)(2), however, requires a more thoughtful and analytical process. This is because not every criminal offense falls within the definition of 8 U.S.C. § 1184(a)(2). Thus, the decision-making process for determining whether a particular offense renders a lawful resident inadmissible and subject to detention is inherently fraught with the risk of error. Furthermore, the immigration officer's decision to detain a lawful resident is not subject to review except through a removal proceeding which will take several months to complete and throughout the proceeding (including the administrative appeal), the lawful resident must remain detained.

The final factor to consider is the public interest. This factor "includes the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand . . ." <u>Mathews v. Eldridge</u>, 424 U.S. at 347, 96 S.Ct. at 909. Admittedly, the true costs of an additional safeguard, such as individualized bond hearings, cannot be accurately predicted. But, it is safe to say that they will not be significant. The additional safeguard is sought only for a particular category of non-citizens, LPRs. The statute and regulations already provide for bond hearings for non-citizens charged as removable. <u>See</u> 8 U.S.C. § 1226(c); 8 C.F.R. § 1236.1. Immigration officers, including the immigration judge and Government attorneys,

12

are familiar with bond hearings and the legal standards applicable in such hearings. Thus, there is no need to establish a separate hearing process or to train Government employees on a new procedure. Moreover, there are potential monetary savings for the Government. In those cases where the immigration officer's decision is overturned and the non-citizen is ordered release, the Government would not have to pay for the cost of detention. The evidence presented with the Amended Petitioner for the Writ also demonstrates that the family, the spouse and "adopted" daughter have had to go on welfare, a governmental cost which would also be eliminated in the event the Petitioner was released.

An individual hearing for non-citizens, like Petitioner, is the only way to ensure "fair consideration" of a lawful resident's right to liberty. Mathews v. Eldridge, 424 U.S. at 349, 96 S.Ct. at 910. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." Id. (quoting Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 171-172, 71 S.Ct. 624, 649 (1951)). No such opportunity is afforded to LPRs under the current procedures. Currently, an immigration officer's decision to detain an LPR as an applicant for admission is unreviewable and operates to deny lawful residents, such as Petitioner, "a meaningful[ ] opportunity to present [his] case." Id.

**III. The Court Should Construe the Regulations Which Deny "Arriving Aliens" the Right to an Individualized Custody Hearing as Not Applying to Petitioner.**

This Court can avoid the constitutional problems discussed above by construing the regulations which deny "arriving aliens" the right to an immigration judge custody hearing as not applying to Petitioner. Construing the regulations in this manner would be consistent with the statutory scheme and with the Court's obligation to construe statutes

13

and regulations to avoid constitutional problems "unless such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392 (1988); Zadvydas v. Davis, 121 S.Ct. at 2503 (interpreting the statute in a way to avoid a "serious constitutional threat").

Indeed, in Kwong Hai Chew, 344 U.S. at 600, the Supreme Court construed INS regulations which permitted the exclusion of an arriving alien without a hearing as not applying to a returning LPR who was entitled to due process. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 214, 73 S.Ct. 625 (1953)(noting that "to escape constitutional conflict [in Chew] we held the administrative regulations . . . inapplicable to aliens so protected by the Fifth Amendment"); Landon, 459 U.S. at 33 (noting same). See also Appah v. Sava, 636 F.Supp. 207 (S.D.N.Y. 1986)(construing immigration custody provisions to provide bond hearing for LPR in exclusion proceeding and thereby avoiding the constitutional problem).[1]

---

[1] Like the instant case, Appah involved a returning LPR's right to an immigration judge custody hearing. The constitutional problem that the court focused on, however, was equal protection rather than due process. Appah involved a LPR who was detained upon returning to the United States solely because he had previously entered the United States illegally. Although this conduct was not itself grounds for exclusion, it was a basis for deportation. Thus, the INS instituted exclusion proceedings against him on the ground that it would be "futile" to admit him since he would be immediately deportable. 636 F.Supp at 210. The INS then argued that, because he was in exclusion proceedings, he was subject to the immigration statute's more stringent release standards for exclusion proceedings rather than its more lenient standards for deportation. Id. at 210-11. The district court noted the irrationality of setting a stricter standard for release for LPRs whose deportability is being determined in exclusion rather than deportation proceedings "solely because of the fortuitous circumstance that they were detained at the border." Id. at 211. Instead of ruling on constitutional grounds, however, the court interpreted the statute "as requiring that the bail criteria applied in deportation proceedings be applied to the case." Id. at 212.

14

As in <u>Chew</u>, this Court can avoid the constitutional problems presented here simply by construing the regulations which deprive arriving aliens of an immigration judge's custody hearing as inapplicable to LPRs. Alternatively, the Court can rule more narrowly by holding that the term "arriving alien" as used in the regulations cannot be applied to a LPR, such as the Petitioner, who would have been admitted into the country but for the DHS' error.

### IV. Release Is Appropriate While Remaining Habeas Issues Pend

A federal court has inherent authority in a habeas corpus action to release a Petitioner while the remainder of the habeas action pends. <u>Mapp v. Reno</u>, 241 F.3d 221(2nd Cir. 2001). In this case, the Petitioner seeks a Writ for his immediate release from detention, and also pending the grant of a Writ on the underlying grounds of suit. The Court has authority to order release pending review and decision on the Writ. <u>Boyer v. City of Orlando</u>, 402 F. 2d 966 (5th Cir. 1968).

### <u>CONCLUSION</u>

This Court should grant Petitioner's Writ of Habeas Corpus, at least to the extent he is detained pending final decisions on his substantive constitutional and statutory claims, and Order his immediate release.

Respectfully submitted,

Paula S. Waddle, Attorney in Charge
107 N. 3rd
Harlingen, TX 78550
(956) 425-6987
(956) 425-7434(fax)
Fed. I.D. No. 5674
State Bar No 26030400

15

## CERTIFICATE OF SERVICE

I, Paula S. Waddle, hereby certify that a copy of the foregoing was mailed

FIRST CLASS MAIL to Mr. Steve Schemmel, AUSA, 1701 W. Highway 83, Suite 600,

TCB-Bentsen Tower, at McAllen, Texas 78501, on the 1st day of June, 2004.

Paula S. Waddle

16