**57826** Federal Register/Vol. 69, No. 187/Tuesday, September 28, 2004/Rules and Regulations

expected to be less than 1 percent of the total expected grower revenue.

This action increases the assessment obligation imposed on handlers. While assessments impose some additional costs on handlers, the costs are minimal and uniform on all handlers. Some of the additional costs may be passed on to producers. However, these costs are offset by the benefits derived by the operation of the marketing order. In addition, the committee's meeting was widely publicized throughout the California dried prune industry and all interested persons were invited to attend the meeting and encouraged to participate in committee deliberations on all issues. Like all committee meetings, the June 23, 2004, meeting was a public meeting and all entities, both large and small, were able to express views on this issue.

This rule imposes no additional reporting or recordkeeping requirements on either small or large California dried prune handlers. As with all Federal marketing order programs, reports and forms are periodically reviewed to reduce information requirements and duplication by industry and public sector agencies.

USDA has not identified any relevant Federal rules that duplicate, overlap, or conflict with this rule.

A proposed rule concerning this action was published in the **Federal Register** on August 16, 2004 (69 FR 50337). Copies of the proposed rule were also mailed or sent via facsimile to all prune handlers. Finally, the proposal was made available through the Internet by USDA and the Office of the Federal Register. A 20-day comment period ending September 7, 2004, was provided for interested persons to respond to the proposal. No comments were received.

A small business guide on complying with fruit, vegetable, and specialty crop marketing agreements and orders may be viewed at: *http://www.ams.usda.gov/fv/moab/html*. Any questions about the compliance guide should be sent to Jay Guerber at the previously mentioned address in the **FOR FURTHER INFORMATION CONTACT** section.

After consideration of all relevant material presented, including the information and recommendation submitted by the committee and other available information, it is hereby found that this rule, as hereinafter set forth, will tend to effectuate the declared policy of the Act.

Pursuant to 5 U.S.C. 553, it also found and determined that good cause exists for not postponing the effective date of this rule until 30 days after publication in the **Federal Register** because the 2004–05 crop year began August 1, 2004, and the marketing order requires that the rate of assessment for each crop year apply to all assessable prunes handled during such period. Further, handlers are aware of this rule which was unanimously recommended at a public meeting. Also, a 20-day comment period was provided for in the proposed rule, and no comments were received.

List of Subjects in 7 CFR Part 993

Marketing agreements, Plums, Prunes, Reporting and recordkeeping requirements.

■ For the reasons set forth in the preamble, 7 CFR part 993 is amended as follows:

## PART 993—DRIED PRUNES PRODUCED IN CALIFORNIA

■ 1. The authority citation for 7 CFR part 993 continues to read as follows:

Authority: 7 U.S.C. 601–674.

■ 2. Section 993.347 is revised to read as follows:

### § 993.347 Assessment rate.

On and after August 1, 2004, an assessment rate of $4.00 per ton is established for California dried prunes.

Dated: September 22, 2004.

**A.J. Yates,**
*Administrator, Agricultural Marketing Service.*
[FR Doc. 04–21627 Filed 9–27–04; 8:45 am]
**BILLING CODE 3410-02-P**

---

## DEPARTMENT OF JUSTICE

**8 CFR Parts 1003, 1212, and 1240**

**[EOIR No. 130F; AG Order No. 2734–2004]**

### Executive Office for Immigration Review; Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997

**AGENCY:** Executive Office for Immigration Review, Justice.
**ACTION:** Final rule.

**SUMMARY:** This final rule adopts without substantial change the proposed rule to establish procedures for lawful permanent residents with certain criminal convictions arising from plea agreements reached prior to a verdict at trial to apply for relief from deportation or removal pursuant to former section 212(c) of the Immigration and Nationality Act. The final rule also sets forth procedures and deadlines for filing motions to seek such relief before an immigration judge or the Board of Immigration Appeals for eligible aliens currently in proceedings or under final orders of deportation or removal.
**DATES:** This rule is effective on October 28, 2004.
**FOR FURTHER INFORMATION CONTACT:** Mary Beth Keller, General Counsel, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041, telephone (703) 305–0470.
**SUPPLEMENTARY INFORMATION:**
Introduction
Response to Comments Received
  A. Ineligibility of Aliens Outside the United States
  B. Ineligibility of Aliens Convicted After a Trial
  C. Stay of Deportation or Removal
  D. The 180-Day Deadline To File a Special Motion To Seek Section 212(c) Relief
  E. Date of the Plea Agreement
  F. Retroactivity of IIRIRA's Definition of "Aggravated felony"
  G. Applicability of AEDPA
  H. The Accrual of Seven Consecutive Years of Lawful Unrelinquished Domicile
  I. Eligibility for Aliens Who Are Deportable on Grounds for Which There Do Not Exist Corresponding Grounds of Exclusion or Inadmissibility
  J. Notification to Affected Individuals
  K. Proof of Permanent Residence
  L. Applicability of the Soriano Rule
  M. Filing New Motions To Reopen After Previously Filing Motions To Reopen

### Introduction

On August 13, 2002, the Department of Justice (Department) published a proposed rule to permit certain lawful permanent residents (LPRs) to apply for relief under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c) (1994 Supp. II 1996), from deportation or removal based on certain criminal convictions before April 1, 1997 ("section 212(c) relief"). 67 FR 52627. The proposed rule described procedures implementing the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001).

This final rule adopts the proposed rule without substantial change. Certain LPRs who pleaded guilty or *nolo contendere* to crimes before April 1, 1997, may seek section 212(c) relief from being deported or removed from the United States on account of those pleas. Under this rule, eligible LPRs currently in immigration proceedings (and former LPRs under a final order of deportation or removal) who have not departed from the United States may file a request to apply for relief under former section 212(c) of the Act, as in effect on the date of their plea, regardless of the date the plea agreement was entered by the court. This rule is applicable only to certain eligible aliens who were convicted pursuant to plea agreements made prior to April 1, 1997.


EXHIBIT A

000001

Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations     57827

The Department reiterates and adopts the Supplementary Information in the proposed rule, and the subsequent correction to the proposed rule published on August 22, 2002, as explaining the final rule. 67 FR 52627; 67 FR 54360. The following sections respond to the public comments, and provide additional discussion explaining the final rule and some clarifying amendments.

In addition, this final rule reflects several technical and structural changes as a result of the establishment of the Department of Homeland Security (DHS), the transfer of the functions of the Immigration and Naturalization Service (INS) to DHS, and the abolition of the INS. On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to DHS pursuant to the Homeland Security Act of 2002 (HSA), Pub. L. 107–296, 116 Stat. 2135, 2178 (Nov. 25, 2002). The HSA also provided that the functions of the immigration judges and the Board of Immigration Appeals within the Executive Office for Immigration Review (EOIR) remain in the Department of Justice under the authority of the Attorney General. The technical changes in this final rule comport with the structural reorganization of the regulations accomplished by the Department of Justice in previous rulemakings establishing a new 8 CFR chapter V containing the regulations relating to immigration adjudications before the immigration judges and the Board of Immigration Appeals, and the administrative functions of EOIR.[1] The final rule also eliminates from 8 CFR 1212.3 the current provisions in paragraphs (a)(1) and (c), which relate to the authority of a district director to grant section 212(c) relief. To the extent that those provisions are still relevant at this time, they are already codified in DHS regulations at 8 CFR 212.3(a)(1) and (c). Consistent with the process for reducing the overlapping regulations between the Department and DHS, the Department is eliminating unnecessary regulations in § 1212.3 that relate solely to the authority of DHS.

The final rule also makes some stylistic changes to simplify the language of the existing regulations—for example, revising the language of 8 CFR 1212.3(e)(2) from "grant or deny an application for advance permission to return to an unrelinquished domicile under section 212(c)" to read "grant or deny an application for section 212(c) relief". Lastly, as explained in the proposed rule, if the Board has jurisdiction and grants a special motion to seek section 212(c) relief, it will remand the case to an immigration judge solely for a determination of the section 212(c) application. The Department recognizes that an alien who files a special motion to seek section 212(c) relief under this rule may have a petition for review pending before a Federal court of appeals. If the Board grants the alien's special motion to seek section 212(c) relief while the case is pending before a Federal court of appeals, the Department anticipates that the government will request that the court hold the case in abeyance pending the resolution of the alien's section 212(c) application before EOIR.

**Response to Comments Received**

The Department received 60 comments on the proposed rule and will respond to them by subject matter. The Department appreciates the analytical detail of these comments, which were received from aliens and their family members, community organizations and special interest groups, immigration attorneys, professors, and other members of the public. The issues raised in the submissions were largely devoted to eligibility concerns, with a majority of the commenters recommending that eligibility for section 212(c) relief be broadened to encompass several categories of aliens who were not eligible for relief under the proposed rule. Other recurring issues raised by the commenters dealt with procedural concerns, such as the need for an automatic stay provision, in addition to concerns about the 180-day deadline applicable to aliens subject to a final order of deportation or removal.

*A. Ineligibility of Aliens Outside the United States*

Approximately 80 percent of the commenters stated that aliens who have already been deported and are currently outside the United States should be eligible to apply for section 212(c) relief. Of these comments, virtually all argued that many aliens were deported without being given a hearing with respect to their eligibility for a waiver under section 212(c). These comments state that because these individuals did not have a "sufficient opportunity" to challenge their deportation order, and since the Supreme Court mandated such a hearing for section 212(c) eligibility in the *St. Cyr* decision, their deportation cannot be conceived as lawful. Accordingly, these commenters recommended that the Department rectify this situation by allowing such aliens who are abroad as a result of deportation to apply for section 212(c) relief, in order to avoid what they see as a continuing impermissible retroactive effect. Other commenters asserted that because such aliens were improperly removed, they should be paroled or admitted into the United States in order to reinitiate their application process for section 212(c) relief. One commenter also argued that the Equal Protection Clause requires that both aliens who are currently in the United States and those abroad be allowed to apply for section 212(c) relief.

Under the proposed rule, aliens would have been ineligible for section 212(c) relief if they: (1) Departed the United States and are currently outside the United States; (2) returned illegally to the United States after being issued a final order of deportation or removal; or (3) are present in the United States without having been admitted or paroled. As previously stated in the proposed rule, the Department finds that as a general rule, aliens who have been deported or departed, and for whom the period of time for filing a petition for review of their removal orders closed may not challenge their prior immigration proceedings. See 8 U.S.C. 1231(a)(5); 8 CFR 1003.2(d); 67 FR at 52629.

After considering the public comments, the Department adheres to the position stated in the proposed rule. Under 8 CFR 1003.2(d), a motion to reopen or to reconsider "shall not be made by or on behalf of a person who is the subject of deportation or removal proceedings subsequent to his or her departure from the United States." The existing regulations thus treat an executed deportation or removal order as administratively complete, thereby eliminating any possibility of challenging a proceeding that resulted in the departure of an alien.

Similarly, the Department believes that this distinction is reasonable and fair because aliens who have been deported had a sufficient opportunity to challenge the denial of their applications for section 212(c) relief in

---

[1] On February 28, 2003, the Attorney General published a technical rule that reorganized title 8 of the Code of Federal Regulations to reflect the transfer of these functions. See Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 FR 9824 (February 28, 2003); see also 68 FR 10349 (March 5, 2003). This technical rule created a new chapter V in 8 CFR as part of the Department of Justice regulations, beginning with 8 CFR 1001; the existing regulations in chapter I of 8 CFR now pertain to DHS. Among other changes, the February 28 rule transferred part 3 and most of part 240 to part 1003 and part 1240, respectively, and duplicated part 212 (in the current DHS regulations) as part 1212 in the Department of Justice regulations. Thus, while the proposed rule and the comments received cited the regulations prior to the reorganization of the regulations, this final rule will reflect the revised section numbers in the regulations.

**57828** Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations

administrative and judicial proceedings. See 67 FR at 52629. Generally, aliens who were deported prior to the Supreme Court's decision in *St. Cyr* had an opportunity to challenge the denial of their section 212(c) application before the Board or a Federal court. These aliens also had the opportunity to apply for stays of deportation in anticipation of the Supreme Court's ruling in *St. Cyr.* Therefore, aliens who were deported had the opportunity to continue to exhaust administrative and judicial remedies that could have enabled them to remain in the United States. Accordingly, the Department finds the distinction precluding section 212(c) eligibility for aliens abroad as a result of a deportation or removal order to be fair and reasonable.

The Department also believes that the decision to distinguish between those aliens who are in the United States and those aliens who have been deported is reasonable and consistent with the plenary authority of the political branches of the government in the immigration area. *See Fiallo* v. *Bell*, 430 U.S. 787, 792 (1977); *Mathews* v. *Diaz*, 426 U.S. 67, 80–82 (1976). As previously noted in the proposed rule, this distinction is reasonable because the aliens who never departed from the United States are not "similarly situated" to those who have had their deportation or removal orders executed, since the administrative deportation process with the latter group has been completed (and aliens in this category are further subject to at least a five-year bar against reentry).

The Department believes that declining to allow aliens who have been deported from the United States to obtain relief under the regulation is consistent with Congress's intent as demonstrated by the language in former section 212(c). *See* 67 FR at 52629. Former section 212(c) of the Act explicitly made aliens under a deportation order ineligible for relief: "[a]liens * * * *not under an order of deportation* * * * may be admitted in the discretion of the Attorney General * * *" 8 U.S.C. 1182(c) (1994) (emphasis added). Thus, Congress stated unequivocally whom it sought to benefit in legislating the section 212(c) waiver. Accordingly, the decision to preclude aliens under a deportation or removal order from obtaining section 212(c) relief is grounded in Congress's intent to limit its availability to those not under deportation orders.

Moreover, the United States Court of Appeals for the Ninth Circuit has upheld this distinction against constitutional challenge in the context of addressing the identical distinction under 8 CFR 1003.44(i). *Alvarenga-Villalobos* v. *Ashcroft*, 271 F.3d 1169 (9th Cir. 2001). In upholding the distinction from an equal protection challenge, the court reasoned that "the government has a legitimate interest in discouraging aliens who have already been deported from illegally reentering," and concluded that "this distinction is rationally related to that purpose." *Id.* at 1174. *See also Robledo-Gonzales* v. *Ashcroft*, 342 F.3d 667, 676–683 (7th Cir. 2003) (equal protection challenge to 8 CFR 1003.44 fails because distinction between illegal reentrants from those eligible under regulation was rational). Thus, the Department declines to grant eligibility to those who have departed the United States and are currently outside the United States, returned illegally to the United States after being issued a final order of deportation or removal, or are present in the United States without having been admitted or paroled. Other LPRs who are currently in the country, however, are allowed to apply for such relief.

*B. Ineligibility of Aliens Convicted After a Trial*

Approximately 25 percent of commenters recommended that the rule should provide eligibility for those aliens who were convicted as a result of a trial, in addition to those who made plea agreements. Of these commenters, most argued that the reliance interests of those who went to trial rather than accept plea bargains should be similarly respected. Specifically, these commenters suggested that, because the Supreme Court in *St. Cyr* recognized the reliance interests of those aliens who made plea agreements with prosecutors while relying on the availability of the existing waiver of deportation under the former section 212(c), a similar analysis for those who decided to go to trial with the expectation that they would be eligible to apply for section 212(c) relief should result in preserving their interests. For example, one commenter suggested that because "an immigrant who chose not to enter a plea * * * may have relied upon the availability of section 212(c) when deciding how to proceed," the Supreme Court's reasoning in *St. Cyr* "applies in both [the trial and plea agreement] cases." Other commenters under this category argued that a fundamental unfairness would result to aliens who were unrepresented or detained because they were not aware of the possible consequences of a conviction from a plea agreement, as opposed to that from a trial.

The Supreme Court in *St. Cyr* specifically focused on plea agreements in deciding that section 212(c) relief remained available for aliens "who, notwithstanding those convictions, would have been eligible for section 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326. The Court recognized that plea agreements involve a *quid pro quo* between the defendant and the government, and that defendants who waive several of their constitutional rights (including the right to a trial) and consequently grant the government numerous tangible benefits are likely doing so in reliance on the availability of section 212(c) relief. *Id.* at 325. As a result of the benefit to the prosecutor bestowed by a plea agreement, and the reliance interest in seeking section 212(c) relief that an alien develops at the time of the guilty plea, it would be contrary to "'familiar considerations of fair notice, reasonable reliance, and settled expectations'" to deprive him or her of the benefit due from the quasi-contractual exchange of benefits entered into with the government. *Id.* at 323–24 (quoting *Landgraf* v. *USI Film Products*, 511 U.S. 244 (1994)). Thus, according to *St. Cyr*, only the reliance interests of those aliens pleading guilty to crimes when section 212(c) was available were sufficiently strong to warrant continued eligibility for such relief.

This issue has been heavily litigated in the federal courts, and every circuit that has addressed the question has held that an alien who is convicted after trial is not eligible for section 212(c) relief under *St. Cyr. Rankine* v. *Reno*, 319 F.3d 93, 100 (2d Cir. 2003); *Theodoropoulos* v. *INS*, 313 F.3d 732, 739–40 (2d Cir. 2002); *Dias* v. *INS*, 311 F.3d 456, 458 (1st Cir. 2002); *Chambers* v. *Reno*, 307 F.3d 284, 293 (4th Cir. 2002), *reh'g denied* (April 1, 2003); *Armendariz-Montoya* v. *Sonchik*, 291 F.3d 1116, 1121–22 (9th Cir. 2002), *cert. denied*, 539 U.S. 902 (2003); *see also Lara-Ruiz* v. *INS*, 241 F.3d 934, 945 (7th Cir. 2001) (pre-*St. Cyr* decision distinguishing between aliens who pleaded guilty and those who are convicted after trial). These courts have recognized that aliens who exercise their constitutional right to go to trial do not have the kind of reliance interests that the Supreme Court focused on in *St. Cyr.*

Accordingly, the Department has determined to retain the distinction between ineligible aliens who were convicted after criminal trials, and those convicted through plea agreements.

Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations 57829

### C. Stay of Deportation or Removal

Approximately 15 percent of commenters recommended that an automatic stay provision should be inserted into the final rule. One commenter stated that a motion to reopen to file for section 212(c) relief should automatically stay the deportation or removal of the alien, while others said that any alien who is eligible for section 212(c) relief should have his or her removal stayed. Further, another commenter proposed that filing a special motion to seek section 212(c) relief should "also serve as an application for a stay" of removal, while another contended that it should be treated "in the same way that a motion to reopen *in absentia* proceedings is currently treated," thereby automatically staying the execution of a final order of deportation or removal upon filing. The general rationale of these commenters was that the consequence of the lack of an automatic stay provision in the final rule would lead to the deportation of eligible aliens before they had the opportunity to apply for section 212(c) relief.

The proposed rule laid out procedures for applying for a stay of deportation or removal for aliens seeking to apply for section 212(c) relief. Requests for a stay of the execution of a final order must be made in accordance with the prevailing regulatory requirements in 8 CFR 241.6, if made with DHS, or 8 CFR 1003.2(f) or 1003.23(b)(1)(v), if made with EOIR. The Department does not find the application of prevailing regulatory requirements to section 212(c) applicants to be unreasonably burdensome. Accordingly, the Department does not find it necessary to include an automatic stay provision under this rule.

### D. The 180-Day Deadline To File a Special Motion To Seek Section 212(c) Relief

Approximately 15 percent of the commenters recommended that the 180-day period to file a special motion to seek section 212(c) relief for aliens under a final order of deportation or removal be extended or eliminated. One commenter stated that this time period allotted to file a special motion is "unreasonably short," given that many LPRs will likely not be aware of this time constraint. Another commenter stated that this time period is inadequate and the Department should "provide additional time to apply," particularly if the Department does not "individually notify affected people." Similarly, another commenter stated simply that the time period is "insufficient," and should be extended to one year.

The Department finds the 180-day requirement in which to file a special motion to seek section 212(c) relief for those aliens subject to a final administrative order of deportation or removal to be a reasonable time constraint. Publication in the **Federal Register** unequivocally constitutes sufficient notice for due process purposes. Congress has specified this form of notice and made that notice binding on all who are within the jurisdiction of the United States. 44 U.S.C. 1507 (publication in **Federal Register** "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). The courts have clearly relied upon the adequacy of notice by publication in the **Federal Register** since the **Federal Register**'s inception. *See, e.g., Lyng* v. *Payne*, 476 U.S. 926, 942–943 (1986); *Dixson* v. *United States*, 465 U.S. 482, 489 n.6 (1984); *Federal Crop Ins. Corp.* v. *Merrill*, 332 U.S. 380, 385 (1947). The Department rejects the notion that more notice is required as a matter of law. The Department does not accept the premise of the commenters' arguments that it, or any other agency, is required to provide individual notice of the content of the law. Like citizens, aliens have a duty to know the law and abide by the law. The Department does note, moreover, that the immigrant community and immigrant advocacy organizations possess a well-established network for providing information to the immigrant community. Additionally, the Department notes that the 180-day deadline is double the normal amount of time within which an immigration judge or the Board has jurisdiction over motions to reopen. 8 CFR 1003.2, 1003.23. This is in addition to the 30-day effective date delay period mandated by the Administrative Procedure Act. 5 U.S.C. 553. Accordingly, the Department is not persuaded that more time is appropriate and will retain the 180-day deadline as stated in the proposed rule.

### E. Date of the Plea Agreement

One commenter argued that proposed § 1003.44(b) would create "proof problems" for the immigration judges and the Board with respect to the date on which an alien made a plea agreement. Proposed § 1003.44(b) lists the eligibility requirements that an alien must establish in seeking section 212(c) relief. Paragraph (b)(4) of this section states that an alien must be "otherwise eligible to apply for section 212(c) relief under the standards that were in effect at the time the alien's plea was made, regardless of when the plea was entered by the court." The commenter suggested that it would be difficult for the immigration judges or the Board to determine when the alien made his or her plea, as the record of criminal proceedings "often does not include [this] information." Instead, the commenter suggested that the date the court accepted the plea should be the operative date. The commenter contended that a defendant in criminal proceedings, both at the State and Federal level, has an absolute right to withdraw a plea until it is accepted, and accordingly, he or she has no legitimate expectations of entitlement to section 212(c) relief until the court accepts it.

The Department declines to accept the commenter's recommendation. The operative language for section 212(c) eligibility—throughout the rule, not just for filing special motions to seek section 212(c) relief—focuses on the "date the plea was agreed to by the parties." 67 FR at 52633. The Department finds that, consistent with the Supreme Court's decision in *St. Cyr*, the key in deciding the extent to which an alien is eligible for section 212(c) relief rests on the available relief at the time the alien and the prosecutor made the plea agreement. The Court stressed the importance of respecting the quasi-contractual agreement between the alien and prosecutor in deciding that the alien's reliance interests in making a plea agreement for a "perceived [immigration] benefit" must be preserved. *St. Cyr*, 533 U.S. at 322. In doing so, the Court did not conclude that the date the criminal court accepts the plea agreement is the time to determine whether the alien is eligible for section 212(c) relief. Thus, the commenter's proposal is not supported by the Supreme Court's ruling in *St. Cyr*. The Department intends to continue to rely on this judicial interpretation.

Further, in any plea agreement in which the government receives "numerous 'tangible benefits * * * without the expenditure of prosecutorial resources,'" the benefits acquired by the prosecutor occur at the moment that the agreement is made given that he or she is relieved of the burdens of preparing the case for trial. *St. Cyr*, 533 U.S. at 322 (quoting *Newton* v. *Rumery*, 480 U.S. 386, 393 n.3 (1987)). Similarly, the moment when the alien enters into an agreement for the exchange of benefits with the prosecutor in reliance on section 212(c) relief eligibility should be the time at which the alien can begin accruing the benefit of the agreement. Accordingly, the Department disagrees with the commenter and will retain the language in the proposed rule specifying

**57830** Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations

that the date the plea was agreed to by the parties will be the time to determine whether an alien is eligible for section 212(c) relief.

The alien seeking section 212(c) relief has the burden of establishing his or her eligibility. This burden of proof includes establishing the date on which the alien entered into a plea agreement with the prosecution that resulted in the conviction from which section 212(c) relief is sought. The nature of the comment concerning "proof problems," however, underscores the need to make clear that the alien seeking section 212(c) relief has the burden of establishing the plea agreement date, and the alien is in the best position to do so because the alien was present (not DHS or the immigration judge) and is most likely to possess the documents reflecting the plea agreement. Accordingly, the Department has inserted a specific statement of that burden in section 1003.44(b) to make this clear. The Department does not believe that the requirement will impose a burden on the immigration judges or the Board.

*F. Retroactivity of IIRIRA's Definition of "Aggravated Felony"*

One commenter suggested that the Department's implementation of the *St. Cyr* decision should preclude a retroactive application of the definition of an aggravated felony as expanded by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104–208, Div. C. 110 Stat. 3009–546. The commenter suggested that the Department allow a section 212(c) applicant to "invoke the law as it was at the time" when the applicant made his or her plea, thereby using the then-existing definitions of aggravated felonies rather than applying retroactively the expanded definitions enacted in IIRIRA. In support of this suggestion, the commenter asserted that "Congress has never had and could not have had the intent to subject [section] 212(c) to the retroactive application of the expanded version of the definition of aggravated felony under IIRIRA." The commenter also asserted that "if the retroactive application of the new definition of aggravated felony would be extended to relief under the pre-IIRIRA regime then the [DHS] could reopen cases to remove aliens who had been granted relief pre-IIRIRA."

The Department disagrees with this analysis. *St. Cyr* makes clear that the Court accepted the retroactive application of the definition of aggravated felony in connection with the availability of section 212(c) relief. In contrast to its finding that there was no unmistakable congressional intent to apply the repeal of section 212(c) retroactively, the Supreme Court in *St. Cyr* clearly reiterated that Congress indicated unambiguously its intention to apply the definition of "aggravated felony" retroactively under IIRIRA section 321(b). 533 U.S. at 319. Thus, IIRIRA's amended definition of "aggravated felony" applies to all convictions, regardless of when they occurred, in determining whether the alien is deportable on account of committing an aggravated felony. Further, as noted in the proposed rule, this amended definition "also applies to determine the eligibility for section 212(c) relief in those cases where an alien is deportable as an aggravated felon. *See Matter of Fortiz,* 21 I&N Dec. 1199 (BIA 1998)." 67 FR at 52630. Accordingly, the Department disagrees with the commenter's contention that the IIRIRA's expanded definition of aggravated felony should not apply to pre-IIRIRA convictions or for purposes of section 212(c) eligibility.

This rule, however, retains the position of the proposed rule that aliens who have not been charged and found deportable as aggravated felons would not be affected by the retroactivity of the aggravated felony definition under IIRIRA section 321. The Department agrees with the Board's finding in *Fortiz* that "in order for an alien to qualify as one who is 'deportable' under [AEDPA's] amendment to section 212(c), he or she must be charged with, and found deportable, on the requisite ground of deportability." *Fortiz,* 21 I&N Dec. at 1212 n.3. Therefore, the expanded definition of aggravated felony enacted in IIRIRA renders ineligible for section 212(c) relief only those aliens who were charged with an aggravated felony as the basis for their deportability. For clarity, this rule revises § 1212.3(f)(4) to reflect the Department's interpretation of the aggravated felony definition, in addition to retaining the language of the proposed rule in amending § 1003.44.

With respect to the commenter's further assertion that the DHS could reopen cases to remove aliens who were granted relief before IIRIRA's effective date if IIRIRA's amended definition of aggravated felony is retroactively applied, the regulations are clear in prohibiting such a result. 8 CFR 1212.3(d) states that "[o]nce an application [for section 212(c) relief] is approved, that approval is valid indefinitely." Thus, unless an exception relating to omissions in the application for section 212(c) applies (as described in 8 CFR 1212.3(d)), an approved section 212(c) application cannot be subsequently revoked. Accordingly, the Department will not incorporate the suggestions from this commenter.

It is also worth noting here that the effect of section 212(c) relief is very limited. For example, a single criminal conviction for a crime involving moral turpitude waived under section 212(c) may still be relied upon at a later date as one of two crimes to establish excludability under section 212(a)(2)(A)(II) of the Act (8 U.S.C. 1182(a)(2)(A)(II)). *Matter of Balderas,* 20 I&N Dec. 389 (BIA 1991). Thus, section 212(c) relief should not be considered a "pardon" and does not eliminate the conviction for any other purpose, such as later applications for discretionary relief. *Balderas,* at 391.

However, the Department has made a change in the final rule in response to the Ninth Circuit's recent decision in *Toia v. Fasano,* 334 F.3d 917 (9th Cir. 2003). In *Toia,* the court of appeals concluded that the amendment made by the Immigration Act of 1990, Pub. L. 101–649, section 511(a), 104 Stat. 4978, 5052 (1990)—which rendered aliens ineligible for section 212(c) relief if they had been convicted of an aggravated felony and had served a term of imprisonment of at least five years—did not apply to an alien who had pleaded guilty to a criminal offense prior to the enactment of that amendment. The court of appeals, in reliance on *St. Cyr,* overruled its own prior precedent, *Samaniego-Meraz v. INS,* 53 F.3d 254 (9th Cir. 1995), which had previously held that the 1990 limitation on the availability of section 212(c) relief properly applied to convictions entered prior to its enactment.

Although the Department does not concede that *Toia* is the better interpretation of the 1990 amendment, and the issue has been the subject of conflicting interpretations as the court acknowledged (*see Toia,* 334 F.3d at 919–920), the Department recognizes that, because the issue is one of only limited practical significance, it is unlikely that this issue will reach the Supreme Court in the future. In *Toia* the plea agreement and the entry of the plea agreement occurred prior to the 1990 Act, and the only issue was the applicability of the 1990 Act. Accordingly, in order to apply a uniform rule in the implementation of section 212(c), the Department will acquiesce in the result of *Toia.* The final rule is amended to provide that the 1990 amendment barring the availability of section 212(c) relief for aggravated felons who have served a term of at least five years for one or more aggravated felonies will not be applied to bar the eligibility of aliens with respect to any

aggravated felony conviction pursuant to a plea agreement that was made prior to November 29, 1990, the date that amendment was enacted. However, the immigration judges and the Board retain the authority to consider the nature and circumstances of any such aggravated felony or felonies as a substantial negative factor weighing against granting relief under former section 212(c) as a matter of discretion. *See e.g., Matter of Marin*, 16 I&N Dec. 581 (BIA 1978); *Matter of Arrequin*, 21 I&N Dec. 38 (BIA 1995); Matter of Burbano, 20 I&N Dec. 872 (BIA 1994); *see also Matter of Jean*, 23 I&N Dec. 373 (AG 2002); *cf., Matter of Y-L, A-G-, R-S-R-*, 23 I&N Dec. 270 (AG 2002).

In making this change, the Department is limiting its effect to those cases in which the alien was convicted pursuant to a plea agreement. Aliens who were convicted of one or more aggravated felonies after trial, whether before or after the enactment of the Immigration Act of 1990, will continue to be subject to the limitations on eligibility for section 212(c) relief. As discussed above, the Supreme Court in *St. Cyr* was careful to limit the impact of its decision only to aliens who had entered into a plea agreement, since only those individuals had sufficient reliance interests to be able to insist on the benefit of their bargain. The Ninth Circuit's decision in *Toia* was based exclusively on the same retroactivity analysis as in *St. Cyr*, and limited its holding to the availability of section 212(c) relief for "aliens who pleaded guilty with the expectation that they would be eligible for such relief." 334 F.3d at 920.

This change is reflected in § 1212.3(f)(4)(ii). This rule also revises the language of § 1212.3(f)(4)(i) to conform to the language of section 212(c) of the Act, regarding aliens who have served a term of imprisonment of five years or more for one or more aggravated felonies.

Finally, the language of § 1212.3(f)(5) has been clarified. The final rule adjusts the language to specifically cite the relevant statutory provisions to make clear that there must be a statutory counterpart in proceedings under section 237 or former section 241 of the Act for section 212(c) relief to reach those convictions.

### G. Applicability of AEDPA

Several commenters suggested that the proposed rule should be modified so that the date the alien committed the crime rather than the date of conviction is used to determine the applicability of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104–132, 110 Stat. 1214. One commenter asserted that "LPRs * * * had a right to know that they were endangering their entire future with their family in the United States by breaking the law, but the gravity of their acts was impossible to predict before the passage of the 1996 laws." The commenter continued, "[t]hose whose crimes occurred before the enactment of AEDPA face the exact same situation as those who were convicted before that date: they could not have been aware of the immigration consequences of their crimes."

The Department disagrees with the commenters. The effect of section 440(d) of AEDPA rendered aliens ineligible for section 212(c) relief if they became deportable for certain criminal convictions. The Department adheres to the interpretation set forth in the proposed rule: "This narrower version of section 212(c) relief is available to aliens who made pleas on or after April 24, 1996, and before April 1, 1997, regardless of when the plea was entered by the court." 67 FR at 52629. It should be noted that the date of the plea agreement, not the conviction date, is the operative date to determine the availability of section 212(c), as well as the applicability of AEDPA. Thus, if an alien makes a plea agreement on or after April 24, 1996 (the effective date of AEDPA), and before April 1, 1997 (the effective date of IIRIRA), he or she may be eligible for section 212(c) relief, as the plea agreement was made before IIRIRA eliminated this form of relief, but he or she is subject to the narrower version of section 212(c) relief as implemented by AEDPA.

To hold the date the crime was committed as the operational date would be contrary to the *St. Cyr* decision, as the Court was explicit in preserving the reliance interests of those aliens that made guilty pleas when section 212(c) was still available. *See St. Cyr*, 533 U.S. at 326 ("We therefore hold that § 212(c) relief remains available for aliens * * * who * * * would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."). The phrase "under the law then in effect" clearly conditions the scope of section 212(c) relief that remains available, thereby giving effect to AEDPA and consequently its narrowed availability of section 212(c) relief. *Id.* Accordingly, the Department will retain the date of the plea agreement as the operational date in determining both the availability and scope of section 212(c) relief for an alien.

### H. The Accrual of Seven Consecutive Years of Lawful Unrelinquished Domicile

Several commenters criticized § 1003.44(b), relating to how the requisite seven years of lawful unrelinquished domicile should be calculated in order to determine eligibility for section 212(c) relief. They asserted that § 1003.44(b)(3) should be amended to provide that an alien must have seven consecutive years of lawful unrelinquished domicile in the United States as determined "at the time the plea was entered," rather than as of "the date of the final administrative order of deportation or removal." They argued that an alien who did not have the requisite seven years of lawful unrelinquished domicile at the time of making the plea could not have relied upon the availability of section 212(c) relief because he or she would not have been eligible for such relief at that time.

The Department disagrees with these comments. The Board has long held that an alien's lawful domicile terminates upon the entry of the final administrative order of deportation. *See Matter of Cerna*, 20 I&N Dec. 399 (BIA 1991). Although Congress has altered a number of provisions of the Act to limit eligibility for relief by the occurrence of specific events, the Department declines the commenters' suggestion to alter the rule in this limited class of cases.

### I. Eligibility for Aliens Who Are Deportable on Grounds for Which There Do Not Exist Corresponding Grounds of Exclusion or Inadmissibility

One commenter stated that the proposed rule should clarify that an alien charged and found deportable as an aggravated felon is not eligible for section 212(c) relief "if there is no comparable ground of inadmissibility for the specific *category* of aggravated felony charged." The commenter continues, "[f]or example, the rule should not apply to aggravated felons charged with deportability under specific types or categories of aggravated felonies such as 'Murder, Rape, or Sexual Abuse of a Minor' or 'Crime of Violence' aggravated felonies." Thus, the commenter states that § 1212.3(f)(4) should include those aliens who have been charged with aggravated felonies for which there is no corresponding ground of inadmissibility as being ineligible for section 212(c) relief.

The commenter is correct in stating this limitation on the scope of relief available under section 212(c). *Matter of Granados*, 16 I&N Dec. 726, 728 (BIA 1979) ("[I]f a ground of deportation is also a ground of inadmissibility, section

**57832** Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations

212(c) can be invoked in a deportation hearing."); *Cabasug v. INS*, 847 F.2d 1321 (9th Cir. 1988); *Matter of Hernandez-Casillas*, 20 I&N Dec. 262 (BIA 1990; A.G. 1991). In describing the eligibility requirements, the supplementary information of the proposed rule noted that "[a]n applicant must, at a minimum, meet the following criteria to be considered for a waiver under section 212(c): * * * [t]he alien is deportable or removable on a ground that has a corresponding ground of exclusion or inadmissibility * * *" 67 FR at 52628–52629. However, this requirement was not included in the regulatory language of the proposed rule. As a result, the Department will effectuate the commenter's suggestion by adding this requirement for section 212(c) eligibility. Accordingly, the final rule provides that an alien who is deportable or removable on a ground that does not have a corresponding ground of exclusion or inadmissibility is ineligible for section 212(c) relief.

*J. Notification to Affected Individuals*

Several commenters suggested that the proposed rule is flawed because it does not provide a mechanism for identifying and notifying LPRs who are eligible to apply for section 212(c) relief. For example, one commenter proposed that the Department "identify individuals who were denied an opportunity to apply for relief on the basis of *St. Cyr* and notify them of this change [because otherwise] many affected individuals will not learn of these rules and will miss the opportunity to resolve their cases."

The Department disagrees with these recommendations. As noted above in relation to other comments, the Department finds that publishing the current rule in the **Federal Register** is the well-established and accepted method of informing the entire public of a change in the law. *See Federal Crop Ins. Corporation*, 332 U.S. at 384–85 ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the **Federal Register** gives legal notice of their contents.") (*citing* 44 U.S.C. 307). The Department does not accept the premise of these arguments that it, or any other agency, is required to provide individual notice of the content of the law. Like citizens, aliens have a duty to know the law and abide by the law.

Immigration judges routinely inform aliens who appear before them of the types of relief for which they may be eligible. 8 CFR 1240.11(a)(2); *cf.* 8 CFR 1240.49(a) (narrower provision applicable to deportation proceedings).

Thus, the Department finds that there exist ample opportunities for aliens affected by this final rule to become aware of its contents. Therefore, the Department declines to accept these recommendations.

*K. Proof of Permanent Residence*

One commenter stated that the Department should eliminate the "burdensome paperwork requirements" of compelling potentially eligible aliens to submit proof of permanent residence. The commenter suggested that "[i]t is inappropriate and impractical to require an individual to provide proof of permanent residence or a copy of the Form I–90 when the EOIR and/or the [DHS] have that information and control access to it."

The Department disagrees with the commenter. Similar to other avenues of petitioning for relief, the alien has the burden of proving that he or she is eligible for, and merits, a form of relief. In the context of section 212(c) in particular, the alien bears the burden of proof to demonstrate LPR status as an essential element of establishing eligibility for such relief. The language of the rule merely reflects the fact that the alien bears this burden of proof.

*L. Applicability of the Soriano Rule*

One commenter expressed concern that the proposed rule would delete a previous rule issued by the Department that created a procedure for eligible aliens to apply for section 212(c) relief. The previous rule, sometimes referred to as the "*Soriano* rule," was published on January 22, 2001, at 66 FR 6436, and is presently codified at 8 CFR 1212.3(g) (and the related motion to reopen rule, which is being replaced by this final rule, is presently codified at 8 CFR 1003.44). The Department adopted the *Soriano* rule in response to the substantial judicial precedent rejecting the interpretation of section 212(c) set forth in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996, A.G. 1997).

Briefly, the *Soriano* rule provided that the limitations of section 440(d) of AEDPA are not applicable to section 212(c) applicants whose deportation proceedings commenced prior to April 24, 1996, the effective date of AEDPA. Under the *Soriano* rule, such section 212(c) applicants may apply for relief, if eligible, under the pre-AEDPA version of section 212(c), irrespective of whether their convictions resulted from plea agreements or criminal trials. The commenter suggested that the "provision set forth in 8 CFR [1]212.3(g) should be retained in its entirety" because of pending cases before the immigration judges and the Board that

were commenced based on the *Soriano* rule.

In this rule, the Department is implementing the Supreme Court's ruling in *St. Cyr* by providing eligibility and procedural requirements for section 212(c) relief for aliens whose convictions were entered after a plea agreement. This rule both amends 8 CFR 1212.3 and replaces the special motion to reopen provisions adopted at the time of the *Soriano* rule, 8 CFR 1003.44 (which is no longer relevant since the time to submit a motion to reopen under that rule has long since expired).

The commenter is correct in observing that the issue addressed in current § 1212.3(g) continues to be relevant to aliens whose deportation proceedings were commenced prior to the enactment of AEDPA. The Department will therefore leave intact the existing provision of 8 CFR 1212.3(g), which will continue to govern cases falling within its parameters.

Any motions that were filed pursuant to the *Soriano* rule that are still pending before the immigration judges or the Board will be adjudicated under the requirements of either the *Soriano* rule or this final rule. However, if a motion under *Soriano* was denied, and the alien desires to seek section 212(c) relief under this rule, he or she will need to file a new special motion, as described in 8 CFR 1003.44, as revised. Even if the motion was denied because the alien did not satisfy the requirements of 8 CFR 1212.3(g) (for deportation proceedings commenced prior to April 24, 1996), that ineligibility will not bar him or her from timely applying for section 212(c) relief under this rule if he or she is eligible under 8 CFR 1003.44 and 1212.3, as revised.

Aliens who were eligible to file for section 212(c) relief under the *Soriano* rule but failed to do so will be able to file for section 212(c) relief under this rule, but only if they meet the eligibility requirements contained in this final rule—that is, with respect to convictions entered pursuant to a plea agreement made prior to April 1, 1997. This rule does not provide any additional relief to aliens whose convictions were entered after a trial. Accordingly, this rule does not extend the deadline of July 23, 2001, for aliens to submit a motion to reopen to apply for section 212(c) relief pursuant to the pre-existing provisions of § 1003.44, with respect to convictions entered after a trial.

*M. Filing New Motions To Reopen After Previously Filing Motions To Reopen*

One commenter inquired whether attorneys representing aliens should file new special motions to seek section

Federal Register / Vol. 69, No. 187 / Tuesday, September 28, 2004 / Rules and Regulations    57833

212(c) relief under this rule if they previously filed a motion to reopen under 8 CFR 1003.2 or 1003.23 in order to seek relief based on the *St. Cyr* decision.

The Department does not require an alien to file a new special motion to seek section 212(c) relief if he or she previously filed a motion to reopen under 8 CFR 1003.2 or 1003.23 based on the *St. Cyr* decision and the previous motion is still pending. An eligible alien who has already filed a motion with an immigration judge or the Board based on the *St. Cyr* decision may supplement that motion if it is still pending.

If the alien's previous motion to reopen based on the *St. Cyr* decision was found to be barred solely because of time or number limits on motions to reopen, this rule makes clear that an eligible alien will be able to file a special motion under this rule to address the merits of the alien's *St. Cyr* claims. However, if the previous motion to reopen under *St. Cyr* was denied for any reason other than because of the time or number limitations for motions to reopen, § 1003.44(g)(3) precludes the filing of a new special motion under this rule. In that instance, the alien has already had the opportunity to raise the *St. Cyr* issues on the merits through a motion to reopen, and there is no reason to give the respondent a second opportunity to raise issues related to *St. Cyr* through another motion to reopen. *See also* 8 CFR 1003.44(d).

Moreover, as stated in the proposed rule, if the alien under a final order of deportation or removal previously filed a motion to reopen or a motion to reconsider with EOIR on "other grounds," he or she is still required to file a separate special motion to seek section 212(c) relief to receive the benefits under this rule as provided in § 1003.44(g)(1).

In view of the fact-specific nature of the determination whether or not to grant section 212(c) relief, this final rule provides that, if the Board grants a special motion to seek section 212(c) relief in a case in which it last had jurisdiction, the Board will remand the case to an immigration judge for adjudication of those issues. 8 CFR 1003.44(j); *see also* 8 CFR 1003.1(d)(3).

### Regulatory Flexibility Act

The Attorney General, in accordance with 5 U.S.C. 605(b), has reviewed this rule and, by approving it, certifies that it affects only Departmental employees and aliens or their representatives who appear in proceedings before the immigration judges or the Board. Therefore, this rule does not have a significant economic impact on a substantial number of small entities.

### Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### Small Business Regulatory Enforcement Fairness Act of 1996

This rule is not a major rule as defined by section 251 of the Small Business Regulatory Enforcement Fairness Act of 1996, 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

### Executive Order 12866

This rule has been drafted and reviewed in accordance with Executive Order 12866, section 1(b), Principles of Regulation. The Department has determined that this rule is a "significant regulatory action" under section 3(f) of Executive Order 12866, Regulatory Planning and Review. Accordingly, this rule has been submitted to the Office of Management and Budget (OMB) for review.

### Executive Order 13132

This rule will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, the Department has determined that this rule does not have sufficient federalism implications to warrant a federalism summary impact statement.

### Executive Order 12988

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### Paperwork Reduction Act of 1995

Under the Paperwork Reduction Act of 1995, Pub. L. 104-13, all Departments are required to submit to OMB for review and approval any reporting requirements inherent in a final rule. This rule does not impose any new reporting or recordkeeping requirements under the Paperwork Reduction Act.

### List of Subjects

*8 CFR Part 1003*

Administrative practice and procedure, Aliens, Immigration, Legal services, Organization and functions (Government agencies).

*8 CFR Part 1212*

Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

*8 CFR Part 1240*

Administrative practice and procedure, Aliens, Immigration.

■ Accordingly, chapter V of title 8 of the Code of Federal Regulations is amended as follows:

### PART 1003—EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

■ 1. The authority citation for part 1003 continues to read as follows:

**Authority:** 5 U.S.C. 301; 8 U.S.C. 1101 note, 1103, 1252 note, 1252b, 1324b, 1362; 28 U.S.C. 509, 510, 1746; sec. 2 Reorg. Plan No. 2 of 1950; 3 CFR, 1949–1953 Comp., p. 1002; section 203 of Pub. L. 105–100, 111 Stat. 2196–200; sections 1506 and 1510 of Pub L. 106–386, 114 Stat. 1527–29, 1531–32; section 1505 of Pub. L. 106–554, 114 Stat. 2763A–326 to –328.

■ 2. Revise 8 CFR 1003.44 to read as follows:

**§ 1003.44 Special motion to seek section 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes before April 1, 1997.**

(a) *Standard for adjudication.* This section applies to certain aliens who formerly were lawful permanent residents, who are subject to an administratively final order of deportation or removal, and who are eligible to apply for relief under former section 212(c) of the Act and 8 CFR 1212.3 with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997. A special motion to seek relief under section 212(c) of the Act will be adjudicated under the standards of this section and 8 CFR 1212.3. This section is not applicable with respect to any conviction entered after trial.

(b) *General eligibility.* The alien has the burden of establishing eligibility for relief, including the date on which the alien and the prosecution agreed on the

plea of guilt or *nolo contendere*. Generally, a special motion under this section to seek section 212(c) relief must establish that the alien:

(1) Was a lawful permanent resident and is now subject to a final order of deportation or removal;

(2) Agreed to plead guilty or *nolo contendere* to an offense rendering the alien deportable or removable, pursuant to a plea agreement made before April 1, 1997;

(3) Had seven consecutive years of lawful unrelinquished domicile in the United States prior to the date of the final administrative order of deportation or removal; and

(4) Is otherwise eligible to apply for section 212(c) relief under the standards that were in effect at the time the alien's plea was made, regardless of when the plea was entered by the court.

(c) *Aggravated felony definition.* For purposes of eligibility to apply for section 212(c) relief under this section and 8 CFR 1212.3, the definition of aggravated felony in section 101(a)(43) of the Act is that in effect at the time the special motion or the application for section 212(c) relief is adjudicated under this section. An alien shall be deemed to be ineligible for section 212(c) relief if he or she has been charged and found deportable or removable on the basis of a crime that is an aggravated felony, except as provided in 8 CFR 1212.3(f)(4).

(d) *Effect of prior denial of section 212(c) relief.* A motion under this section will not be granted with respect to any conviction where an alien has previously been denied section 212(c) relief by an immigration judge or by the Board on discretionary grounds.

(e) *Scope of proceedings.* Proceedings shall be reopened under this section solely for the purpose of adjudicating the application for section 212(c) relief, but if the immigration judge or the Board grants a motion by the alien to reopen the proceedings on other applicable grounds under 8 CFR 1003.2 or 1003.23 of this chapter, all issues encompassed within the reopened proceedings may be considered together, as appropriate.

(f) *Procedure for filing a special motion to seek section 212(c) relief.* An eligible alien shall file a special motion to seek section 212(c) relief with the immigration judge or the Board, whichever last held jurisdiction over the case. An eligible alien must submit a copy of the Form I-191 application, and supporting documents, with the special motion. The motion must contain the notation "special motion to seek section 212(c) relief." The Department of Homeland Security (DHS) shall have 45 days from the date of filing of the special motion to respond. In the event the DHS does not respond to the motion, the DHS retains the right in the proceedings to contest any and all issues raised.

(g) *Relationship to motions to reopen or reconsider on other grounds.* (1) Other pending motions to reopen or reconsider. An alien who has previously filed a motion to reopen or reconsider that is still pending before an immigration judge or the Board, other than a motion for section 212(c) relief, must file a separate special motion to seek section 212(c) relief pursuant to this section. The new motion shall specify any other motions currently pending before an immigration judge or the Board. An alien who has previously filed a motion to reopen under 8 CFR 1003.2 or 1003.23 based on *INS v. St. Cyr* is not required to file a new special motion under this section, but he or she may supplement the previous motion if it is still pending. Any motion for section 212(c) relief described in this section pending before the Board or an immigration judge on the effective date of this rule that would be barred by the time or number limitations on motions shall be deemed to be a motion filed pursuant to this section, and shall not count against the number restrictions for other motions to reopen.

(2) *Motions previously filed pursuant to prior provision.* If an alien previously filed a motion to apply for section 212(c) relief with an immigration judge or the Board pursuant to the prior provisions of this section, as in effect before October 28, 2004, and the motion is still pending, the motion will be adjudicated pursuant to the standards of this section, both as revised and as previously in effect, and the alien does not need to file a new special motion pursuant to paragraph (g)(1) of this section. However, if a motion filed under the prior provisions of this section was denied because the alien did not satisfy the requirements contained therein, the alien must file a new special motion pursuant to this section, if eligible, in order to apply for section 212(c) relief based on the requirements established in this section.

(3) *Effect of a prior denial of a motion to reopen or motion to reconsider filed after the St. Cyr decision.* A motion under this section will not be granted where an alien has previously submitted a motion to reopen or motion to reconsider based on the *St. Cyr* decision and that motion was denied by an immigration judge or the Board (except on account of time or number limitations for such motions).

(4) *Limitations for motions.* The filing of a special motion under this section has no effect on the time and number limitations for motions to reopen or reconsider that may be filed on grounds unrelated to section 212(c).

(h) *Deadline to file a special motion to seek section 212(c) relief under this section.* An alien subject to a final administrative order of deportation or removal must file a special motion to seek section 212(c) relief on or before April 26, 2005. An eligible alien may file one special motion to seek section 212(c) relief under this section.

(i) *Fees.* No filing fee is required at the time the alien files a special motion to seek section 212(c) relief under this section. However, if the special motion is granted, and the alien has not previously filed an application for section 212(c) relief, the alien will be required to submit the appropriate fee receipt at the time the alien files the Form I-191 with the immigration court.

(j) *Remands of appeals.* If the Board has jurisdiction and grants the motion to apply for section 212(c) relief pursuant to this section, it shall remand the case to the immigration judge solely for adjudication of the section 212(c) application.

(k) *Limitations on eligibility under this section.* This section does not apply to:

(1) Aliens who have departed the United States and are currently outside the United States;

(2) Aliens issued a final order of deportation or removal who then illegally returned to the United States; or

(3) Aliens who have not been admitted or paroled.

**PART 1212—DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSIBLE ALIENS; PAROLE**

■ 3. The authority citation for part 1212 is revised to read as follows:

**Authority:** 8 U.S.C. 1101, 1102, 1103, 1182, 1184, 1187, 1225, 1226, 1227.

■ 4. Amend § 1212.3 by:
■ A. Revising the section heading, paragraph (a), the second to last sentence of paragraph (b);
■ B. Removing and reserving paragraph (c);
■ C. Revising paragraph (d), paragraph (e), paragraph (f) introductory text, and paragraphs (f)(3), (f)(4), and (f)(5); and
■ D. Adding a new paragraph (h).

The revisions and addition read as follows:

Federal Register/Vol. 69, No. 187/Tuesday, September 28, 2004/Rules and Regulations    57835

§ 1212.3 Application for the exercise of discretion under former section 212(c).

(a) *Jurisdiction.* An application by an eligible alien for the exercise of discretion under former section 212(c) of the Act (as in effect prior to April 1, 1997), if made in the course of proceedings under section 240 of the Act, or under former sections 235, 236, or 242 of the Act (as in effect prior to April 1, 1997), shall be submitted to the immigration judge by filing Form I-191, Application for Advance Permission to Return to Unrelinquished Domicile.

(b) * * * All material facts or circumstances that the applicant knows or believes apply to the grounds of excludability, deportability, or removability must be described in the application. * * *

(c) [Reserved]

(d) *Validity.* Once an application is approved, that approval is valid indefinitely. However, the approval covers only those specific grounds of excludability, deportability, or removability that were described in the application. An applicant who failed to describe any other grounds of excludability, deportability, or removability, or failed to disclose material facts existing at the time of the approval of the application, remains excludable, deportable, or removable under the previously unidentified grounds. If the applicant is excludable, deportable, or removable based upon any previously unidentified grounds a new application must be filed.

(e) *Filing or renewal of applications before an immigration judge.* (1) An eligible alien may renew or submit an application for the exercise of discretion under former section 212(c) of the Act in proceedings before an immigration judge under section 240 of the Act, or under former sections 235, 236, or 242 of the Act (as it existed prior to April 1, 1997), and under this chapter. Such application shall be adjudicated by the immigration judge, without regard to whether the applicant previously has made application to the district director.

(2) The immigration judge may grant or deny an application for relief under section 212(c), in the exercise of discretion, unless such relief is prohibited by paragraph (f) of this section or as otherwise provided by law.

(3) An alien otherwise entitled to appeal to the Board of Immigration Appeals may appeal the denial by the immigration judge of this application in accordance with the provisions of § 1003.38 of this chapter.

(f) *Limitations on discretion to grant an application under section 212(c) of the Act.* An application for relief under former section 212(c) of the Act shall be denied if:

\* \* \* \* \*

(3) The alien is subject to inadmissibility or exclusion from the United States under paragraphs (3)(A), (3)(B), (3)(C), (3)(E), or (10)(C) of section 212(a) of the Act;

(4) The alien has been charged and found to be deportable or removable on the basis of a crime that is an aggravated felony, as defined in section 101(a)(43) of the Act (as in effect at the time the application for section 212(c) relief is adjudicated), except as follows:

(i) An alien whose convictions for one or more aggravated felonies were entered pursuant to plea agreements made on or after November 29, 1990, but prior to April 24, 1996, is ineligible for section 212(c) relief only if he or she has served a term of imprisonment of five years or more for such aggravated felony or felonies, and

(ii) An alien is not ineligible for section 212(c) relief on account of an aggravated felony conviction entered pursuant to a plea agreement that was made before November 29, 1990; or

(5) The alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act.

\* \* \* \* \*

(h) *Availability of section 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes.* For purposes of this section, the date of the plea agreement will be considered the date the plea agreement was agreed to by the parties. Aliens are not eligible to apply for section 212(c) relief under the provisions of this paragraph with respect to convictions entered after trial.

(1) *Pleas before April 24, 1996.* Regardless of whether an alien is in exclusion, deportation, or removal proceedings, an eligible alien may apply for relief under former section 212(c) of the Act, without regard to the amendment made by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, with respect to a conviction if the alien pleaded guilty or nolo contendere and the alien's plea agreement was made before April 24, 1996.

(2) *Pleas between April 24, 1996 and April 1, 1997.* Regardless of whether an alien is in exclusion, deportation, or removal proceedings, an eligible alien may apply for relief under former section 212(c) of the Act, as amended by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, with respect to a conviction if the alien pleaded guilty or nolo contendere and the alien's plea agreement was made on or after April 24, 1996, and before April 1, 1997.

(3) *Pleas on or after April 1, 1997.* Section 212(c) relief is not available with respect to convictions arising from plea agreements made on or after April 1, 1997.

PART 1240—PROCEEDINGS TO DETERMINE REMOVABILITY OF ALIENS IN THE UNITED STATES

■ 5. The authority citation for part 1240 is revised to read as follows:

Authority: 8 U.S.C. 1103; 1182, 1186a, 1224, 1225, 1226, 1227, 1251, 1252 note, 1252a, 1252b, 1362; secs. 202 and 203, Pub. L. 105-100 (111 Stat. 2160, 2193); sec. 902, Pub. L. 105-277 (112 Stat. 2681).

§ 1240.1 [Amended]

■ 6. In § 1240.1, amend paragraph (a)(1)(ii) by removing the words "and section 902 of Pub. L. 105-277" and replacing them with the words "section 902 of Pub. L. 105-277, and former section 212(c) of the Act (as it existed prior to April 1, 1997)".

Dated: September 20, 2004.

John Ashcroft,

*Attorney General.*

[FR Doc. 04-21605 Filed 9-27-04; 8:45 am]

BILLING CODE 4410-30-P

---

FEDERAL RESERVE SYSTEM

12 CFR Part 201

[Regulation A]

Extensions of Credit by Federal Reserve Banks

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule.

SUMMARY: The Board of Governors of the Federal Reserve System (Board) has adopted final amendments to its Regulation A to reflect the Board's approval of an increase in the primary credit rate at each Federal Reserve Bank. The secondary credit rate at each Reserve Bank automatically increased by formula as a result of the Board's primary credit rate action.

DATES: The amendments to part 201 (Regulation A) are effective September 28, 2004. The rate changes for primary and secondary credit were effective on the dates specified in 12 CFR 201.51, as amended.

FOR FURTHER INFORMATION CONTACT: Jennifer J. Johnson, Secretary of the Board (202/452-3259); for users of